**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

PATRICK ANTHONY BOSFIELD, JR.,

    Petitioner,

v.

CHARLES B. SAMUELS, JR.; WARDEN T. JOHNS; and RODGER PERRY,

    Respondents.

CIVIL ACTION NO.: 5:15-cv-1

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Patrick Bosfield, Jr., ("Bosfield"), who is currently housed at D. Ray James Prison in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondents filed a Response. (Doc. 11.) Bosfield filed a Traverse as well as two (2) "updates" to his Petition. (Docs. 12, 13, 14.) Respondents filed a Response to Bosfield's "updates", and Bosfield filed a Reply. (Docs. 16, 18.) For the reasons which follow, I **RECOMMEND** Bosfield's Petition be **DENIED** in part and **DISMISSED** in part. I also **RECOMMEND** Bosfield be **DENIED** a Certificate of Appealability and be **DENIED** *in forma pauperis* status on appeal.

BACKGROUND

Bosfield pleaded guilty to and was convicted of encouraging and inducing aliens to enter and remain in the United States, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), in the Southern District of Florida. (Doc. 11-1, p. 16.) Bosfield was sentenced to 60 months' imprisonment. (Id. at p. 17.) He has a projected release date of December 5, 2015, via good conduct time release. (Id. at p. 12.)

DISCUSSION

Bosfield received an incident report on October 12, 2012, charging him with participation in a group demonstration and refusing to obey an order, in violation of Codes 212 and 307, respectively, of the Inmate Disciplinary Rules. (Doc. 1, p. 4; Doc. 11, p. 5.) The incident report was investigated, and the report was forwarded to the Unit Discipline Committee ("UDC") for a hearing. (Id. at p. 6.) The UDC referred the matter to be heard by a Disciplinary Hearing Officer ("DHO") based on the severity of the charges against Bosfield. (Id.) After the hearing, DHO Jessica Chockley, who was formerly employed by the GEO Group, Inc., and worked at D. Ray James Correctional Facility, determined Plaintiff was guilty of the Code violations.[1] DHO Chockley recommended Bosfield be sanctioned with, *inter alia*, disallowance of 27 days' good conduct time. (Id. at 7.) DHO Chockley then forwarded her recommendation to a DHO Oversight Specialist with the Bureau of Prisons ("BOP") Privatization Management Branch in Washington, D.C., who found that the recommended sanctions were appropriate and that the hearing process complied with due process. (Id.)

In his Petition, Bosfield asserts the incident in question occurred on October 8, 2012, yet he did not receive the incident report until October 12, 2012. According to Bosfield, receiving the incident report four (4) days after the incident violated Policy Statement 541.5(a) because he should have received the report the day after the incident. (Doc. 1, pp. 1–2.) Bosfield alleges the BOP violated his right to due process during the course of the investigation into this incident report. Bosfield also alleges DHO Chockley was not an employee of the BOP and lacked authority to discipline him. (Id. at p. 12.) Finally, Bosfield contends that the air conditioning at D. Ray James Correctional Facility did not work for 62 days, which subjected him and the rest of

---

[1] Jessica Chockley no longer works at D. Ray James Correctional Facility, nor is she employed by the GEO Group, Inc., in any capacity. (Doc. 11-1, p. 7 n.1.)

2

the inmates in his unit to cruel and unusual punishment, in violation of the Eighth Amendment. (Id. at pp. 10–12.) Bosfield seeks to have the DHO's imposed sanctions against him dismissed and the restoration of his good conduct time. (Id. at p. 19.)

Respondents assert the applicable due process requirements were met during Bosfield's disciplinary proceedings. (Doc. 11, pp. 8–13.) Respondents contend the BOP did not unlawfully delegate its authority to impose inmate discipline to staff at D. Ray James Prison. (Id. at pp. 13-14.) Respondents also contend Bosfield's Eighth Amendment claim is not cognizable via his habeas corpus petition. (Id. at pp. 14–15.)

The Court addresses each of these arguments in turn.

**I. Whether Bosfield's right to due process was violated**

Bosfield contends he was not served with the incident report pertaining to the incident at issue until October 12, 2012, which was four (4) days after the incident. Bosfield maintains this was a violation of BOP policy because he should have been served with the report on October 9, 2012. Bosfield asserts Policy Statement 541.5(a) requires that the discipline process start when "staff witness or reasonably believe that you (an inmate) has [sic] committed a prohibited act." (Doc. 1, p. 1.) Bosfield maintains numerous staff members were present in the housing unit who witnessed his and other inmates' actions on October 8, 2012, and he should have been served with the incident report within 24 hours of this incident to comport with due process. (Id. at p. 2.) Bosfield avers the incident report he was served clearly states staff at D. Ray James Correctional Facility investigated the incident before he was served with the incident report, which is a clear violation of Policy Statement 541.5(b).

Respondents allege that the record of Bosfield's DHO hearing reveals that due process requirements were met. Specifically, Respondents note staff had to determine the involvement

3

or non-involvement in the group demonstration of nearly 100 inmates, which necessitated an investigation before the issuance of any incident reports. (Doc. 11, p. 9.) Respondents assert the warden began his investigation on the date of the incident and did not conclude his investigation until October 12, 2012. Respondents aver it was not until Bosfield's involvement in the group demonstration was determined on October 12, 2012, that an incident report was issued against him. Respondents allege Bosfield received notice of the DHO hearing and of his rights at the hearing on October 15, 2012, and that hearing was conducted on October 24, 2012. (Id. at p. 11.) Respondents also allege Bosfield attended the hearing, had the opportunity to call witnesses and present documentary evidence at the hearing, and his requested staff representative appeared on Bosfield's behalf. Respondents contend Bosfield received a copy of the written DHO report on February 8, 2013, and there was sufficient evidence to support the DHO's findings and recommendations. (Id. at pp. 11–12.)

To determine whether Bosfield's right to due process was violated, it must be determined what process was due to Bosfield during the disciplinary hearing process. A prisoner has a protected liberty interest in statutory good time credits, and, therefore, a prisoner has a constitutional right to procedural due process in the form of a disciplinary hearing before those credits are denied or taken away. O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir. 2011) (citing Wolff v. McDonnell, 418 U.S. 539, 555–57 (1974)). That due process right is satisfied when the inmate: (1) receives advance written notice of the charges against him, (2) is given the opportunity to call witnesses and present documentary evidence, and (3) receives a written statement setting forth the disciplinary board's findings of fact. Id. (citing Wolff, 418 U.S. at 563–67). Additionally, the Court of Appeals for the Eleventh Circuit has determined that an inmate has the right to attend his disciplinary hearing. Battle v. Barton, 970 F.2d 779, 782–83

(11th Cir. 1992). "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985)). Determining whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Smith, 432 F. App'x at 845. "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Tedesco v. Sec'y for Dep't of Corr., 190 F. App'x 752, 757 (11th Cir. 2006) (internal citation omitted). In addition, an inmate facing disciplinary sanctions is not entitled to the full panoply of rights afforded to criminal defendants. Id.

Bosfield was charged by incident report dated October 12, 2012, with participating in a group demonstration, a Code 212 violation, and refusing to obey an order of a staff member, a Code 307 violation. Bosfield received a copy of this incident report on October 12, 2012. (Doc. No. 11-1, p. 29.) The UDC conducted a hearing on October 15, 2012. (Id. at p. 32.) The UDC referred the matter to a DHO for a hearing based on the severity of the charges. (Id. at p. 34.) Bosfield was advised of his rights for the disciplinary hearing before the DHO, including his rights to have a staff member represent him during this hearing and to call witnesses and present documentary evidence, on October 15, 2012. (Id.) Bosfield indicated that he did not wish to have a staff representative but wished to call Steven Chambless as a witness. (Id.). On October 19, 2012, Bosfield requested to have a staff representative at this hearing. (Id. at p. 36.)

5

Bosfield's disciplinary hearing was conducted on October 24, 2012, at which time the DHO read and reviewed Bosfield's due process rights. (Id. at pp. 38.) DHO Chockley found that Bosfield was guilty of the Code 212 and Code 307 offenses as charged based on the greater weight of the evidence. In so doing, DHO Chockley relied on the incident report and investigation, as well as the inmate investigative report, which was signed by the warden on October 15, 2012. DHO Chockley also relied on two (2) digital photographs of the incident printed from closed circuit television, a digital video of the incident, and a printed roster of the inmates living in the housing unit, all of which were dated October 8, 2012. (Id. at p. 39.) DHO Chockley considered Bosfield's assertion that he was an unwilling participant in this group demonstration, but she found this assertion "insufficient to excuse [Bosfield] from committing a prohibited offense." (Id. at p. 41.) In considering this assertion, DHO Chockley determined there were mitigating factors surrounding Bosfield's direct involvement in the group demonstration, which resulted in less severe sanctions. (Id.) DHO Chockley delivered a copy of her findings to Bosfield on February 8, 2013. (Id. at p. 42.)

Bosfield's disciplinary hearing was conducted on October 24, 2012, and he was notified of the charges against him on October 12, 2012, which was more than 24 hours prior to the hearing before the DHO. Thus, the first Wolff factor was met. The second Wolff factor was met on October 15, 2012, when Bosfield was made aware of his right to call witnesses and to present documentary evidence. The third Wolff factor was met when Bosfield received written notice of DHO Chockley's decision on February 8, 2013. In addition, a review of DHO Chockley's findings reveals that there is "some evidence" to support her finding that Bosfield committed the Code 212 and Code 307 violations. Specifically, DHO Chockley made her findings based on Bosfield's statements during the hearing, as well as the documentary evidence before her.

6

Accordingly, Bosfield received all of the due process protections afforded him during the disciplinary proceedings, and his contentions to the contrary are without merit.[2] Thus, this portion of Bosfield's Petition should be **DENIED**.

## II. Whether the DHO was authorized to impose sanctions

The Court must determine whether DHO Chockley was authorized to impose sanctions against Bosfield. To do so, the Court must look to the applicable statutes and regulations. The BOP is responsible for "the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(3). The BOP's authority in this area may include contracting out the care of prisoners to private facilities. 18 U.S.C. § 4013(a)(3). The relationship between the federal government and facilities which house federal inmates pursuant to contract has been described as follows:

> Even though the federal government may enter into contracts with a local agency for imprisonment of federal prisoners, 'no federal agency or officer thereof has any authority to exercise any control over the day to day management of the local institution or over the details of the custody and care of federal prisoners confined therein.'. . . . 18 U.S.C. § 4001(b)(1), [provides] that '[t]he control and management of Federal penal and correctional institutions . . . shall be vested in the Attorney General, who shall promulgate rules for the government thereof, and appoint all necessary officers and employees in accordance with the civil-service laws. Therefore, when the Attorney General is not permitted to fulfill this role with respect to a penal facility, even when a contract for usage of that facility exists, the facility cannot properly be categorized as a [f]ederal prison."

United States v. Cardona, 266 F. Supp.2d 558, 560 (W.D. Tex. 2003) (internal citations omitted).

---

[2] Bosfield's citation to the policies in place for disciplinary proceedings is correct. Section 541.5(a) provides; "The discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident." Program Statement 5270.09, Ch. 2, § 541.5, http://www.bop.gov/policy/progstat/5270_009.pdf, last accessed Sept. 8, 2015. As noted in the body of this Report, however, staff did not become aware of Bosfield's involvement in this incident until October 12, 2012, and it was on that date he was notified of the charges against him.

It appears that the BOP has no direct or constructive control over managerial functions at D. Ray James Correctional Facility, and the Court agrees that D. Ray James Correctional Facility is not a "federal" prison. However, it must be determined whether staff at D. Ray James Correctional Facility, as a non-federal facility, may nevertheless impose disciplinary sanctions as delegated by the BOP. "It is well-established that federal agencies may not delegate their statutory authorities to private parties. However, '[t]he ultimate test of the validity of an agency's delegation of responsibility to a private party is whether the delegating agency retains final decision-making authority.'" R. & R., Caraballo-Rodriguez v. Pugh, 3:04-cv-81 (S.D. Ga. Mar. 23, 2005) (citing Ocean Conservancy v. Evans, 260 F. Supp.2d 1162, 1183 (M.D. Fla. 2003)), ECF No. 12.

Here, the BOP is charged with making a final determination as to whether disciplinary proceedings are proper. Because the BOP has retained final decision-making authority in the imposition of disciplinary sanctions, it has not unlawfully delegated its authority to D. Ray James Correctional Facility staff. See 28 C.F.R. § 541 (federal regulations pertaining to inmate discipline); see also, Program Statement 5720.09 (stating that it is necessary for institution authorities to impose discipline on those inmates whose behavior is not in compliance with the BOP's rules in order for inmates to live in a safe and orderly environment). In fact, DHO Chockley submitted her findings and recommended sanctions to a DHO Oversight Specialist with the BOP's Privatization Management Branch for review. Daniel McCarthy informed DHO Chockley that the DHO report was reviewed and found to be in compliance with due process requirements, and that the recommended sanctions were in accord with Program Statement 5270.09. (Doc. 11-1, p. 44.) Because the BOP properly delegated its authority,

Bosfield is not entitled to his requested relief on this ground. Based on this reason, this portion of Bosfield's Petition should be **DISMISSED**.

### III. Whether Bosfield's Eighth Amendment claim can be addressed in a habeas corpus proceeding

Bosfield asserts that the air conditioning in his dorm unit was not operating properly for more than two (2) months' time, which subjected him and his fellow inmates to cruel and unusual punishment. Despite Bosfield's presentment of this claim in this Section 2241 Petition, he should have filed this claim pursuant to 28 U.S.C. § 1331 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).[3] In general, the distinction between claims which may be brought under Bivens and those which must be brought as habeas petitions is reasonably well settled. Claims in which federal prisoners assert that they are being subjected to unconstitutional punishment not imposed as part of their sentence, such as, for example, being denied the right to be free from cruel and unusual punishment, are Bivens actions, not habeas actions. See e.g., Farmer v. Brennan, 511 U.S. 825 (1994). Habeas actions, in contrast, are those that explicitly or by necessary implication challenge a prisoner's conviction or the sentence imposed on him by (or under the administrative system implementing the judgment of) a court. Thus, for example, when a prisoner makes a claim that, if successful, could shorten or invalidate his term of imprisonment, the claim must be brought as a habeas petition, not as a Bivens claim. See e.g., Edwards v. Balisok, 520 U.S. 641 (1997); Heck v. Humphrey, 512 U.S. 477 (1994). Bosfield's allegations concerning cruel and unusual punishment detail the conditions of his confinement and are not cognizable pursuant to 28 U.S.C.

---

[3] The Court notes the alleged improper functioning of the air conditioning in Bosfield's dorm was the catalyst for the group demonstration. (Doc. 1, pp. 10–12; Doc. 11-1, pp. 40–41.) Nevertheless, the portion of Bosfield's Petition alleging violations of his Eighth Amendment rights is not cognizable in this habeas corpus proceeding.

§ 2241. Accordingly, this portion of Bosfield's Petition should be **DISMISSED** without prejudice.

## IV. Leave to Appeal *In Forma Pauperis* and Certificate of Appealability

The Court should also deny Bosfield leave to appeal *in forma pauperis,* and he should be denied a Certificate of Appealability ("COA"). Though Bosfield has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Thomas v. Crosby, 371 F.3d 782, 797 (11th Cir. 2004) (Tjoflat, J., specially concurring) ("A district court may *sua sponte* grant or deny a COA at the same time it rules on the merits of a habeas petition or rejects it on procedural grounds. This is arguably the best time for a district judge to decide this matter because the issues are still fresh in [the district court's] mind."); Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed a notice of appeal); Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not take in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531

(11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a Certificate of Appealability is issued. A Certificate of Appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a Certificate of Appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a Certificate of Appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of Bosfield's petition and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**.

CONCLUSION

Based on the foregoing, I **RECOMMEND** that Bosfield's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241 be **DENIED** in part and **DISMISSED** in part, and this case be **CLOSED**. I also **RECOMMEND** that Bosfield be **DENIED** a Certificate of Appealability and be **DENIED** *in forma pauperis* status on appeal.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Furthermore, it is not necessary for a party to repeat legal arguments in objections.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. . A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon Bosfield and Respondents.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 17th day of September, 2015.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA